IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

**ROGER LEWIS, Individually and on**                    **PLAINTIFF**
**Behalf of All Others Similarly Situated**

vs.                              No. 4:20-cv-4017-SOH

**TIGER EYE PIZZA, LLC, and**                          **DEFENDANTS**
**KENNETH SCHROEPFER**

## ORIGINAL COMPLAINT—COLLECTIVE ACTION

COMES NOW Plaintiff Roger Lewis ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorney Josh Sanford of Sanford Law Firm, PLLC, and for his Original Complaint—Collective Action against Tiger Eye Pizza, LLC, and Kenneth Schroepfer ("Defendants"), they do hereby state and allege as follows:

### I.    JURISDICTION AND VENUE

1.    Plaintiff, individually and on behalf of all others similarly situated, brings this action under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), and the Arkansas Minimum Wage Act, Ark. Code Ann. § 11-4-201, *et seq.* ("AMWA"), for declaratory judgment, monetary damages, liquidated damages, prejudgment interest, and costs, including reasonable attorneys' fees as a result of Defendants' failure to pay Plaintiff and all others similarly situated as delivery drivers the legal minimum hourly wage and overtime compensation for all hours that Plaintiff and all others similarly situated worked in excess of forty (40) per workweek

2. Upon information and belief, for at least three (3) years prior to the filing of this Complaint, Defendants have willfully and intentionally committed violations of the FLSA and AMWA as described *infra*.

3. The United States District Court for the Western District of Arkansas has subject matter jurisdiction over this suit under the provisions of 28 U.S.C. § 1331 because this suit raises federal questions under the FLSA.

4. Plaintiff's claims under the AMWA form part of the same case or controversy and arise out of the same facts as the FLSA claims alleged in this complaint. Therefore, this Court has supplemental jurisdiction over Plaintiff's AMWA claims pursuant to 28 U.S.C. § 1367(a).

5. Defendants conduct business within the States of Arkansas and Texas, operating several pizza delivery establishments under the name Domino's Pizza, in Texarkana, Arkansas, and Texarkana, Texas.

6. Venue lies properly within this Court under 28 U.S.C. § 1391(b)(1) and (c)(2), because the State of Arkansas has personal jurisdiction over the parties as the parties reside in this district and a substantial part of the events giving rise to the claim herein occurred in the district.

## II.   THE PARTIES

7. Plaintiff repeats and re-alleges all the preceding paragraphs of this Complaint as if fully set forth in this section.

8. Plaintiff is a resident and citizen of Bowie County, Texas.

9.     Within the three years preceding the filing of this lawsuit, Plaintiff worked as an hourly-paid delivery driver employee at Defendants' pizza store located at 3214 Jefferson Avenue in Texarkana, Arkansas.

10.     At all times material herein, Plaintiff and those similarly situated to Plaintiff have been entitled to the rights, protections and benefits provided under the FLSA and the AMWA.

11.     Defendant Tiger Eye Pizza, LLC d/b/a Domino's Pizza ("Defendant Tiger Eye") is a foreign limited liability company, which operates various Domino's franchises in Arkansas and Texas.

12.     Defendant Tiger Eye's principal address is 1509 Suburbia Drive, Shreveport, Louisiana 71105.

13.     Defendant Tiger Eye Pizza was incorporated and organized by Kenneth Schroepfer.

14.     Defendant Kenneth Schroepfer ("Defendant Schroepfer") is the owner of Tiger Eye Pizza, LLC.

15.     Defendant Schroepfer is the operator of Tiger Eye Pizza, LLC.

16.     Defendant Schroepfer is the president of Tiger Eye Pizza, LLC.

17.     The Tiger Eye Pizza, LLC's Domino stores are part of a single integrated enterprise.

18.     At all relevant time, Defendants' stores shared common management and were centrally owned by Defendants.

19.     At all relevant times, Defendants' maintained control over labor relations, policies, and procedures at Defendants' stores.

20.     During all relevant times, Defendants' allowed employees to transfer or be shared by and between all Tiger Eye Pizza locations without retraining.

21.     Defendants have direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated delivery driver employees.

22.     Plaintiff had conversations with Defendant Schroepfer about their pay rate as delivery drivers.

23.     During all relevant times, Defendants also exercised operational control over the delivery drivers at Defendants' stores, including, but not limited to, control over recruiting and training of delivery drivers, compensation of delivery drivers, job duties of delivery drivers, reimbursements to delivery drivers, recruiting and training managers, design and layout of the restaurants, sales, and marketing programs, public relations programs, promotional services, appearance and conduct standards, inventory, and inventory controls.

24.     Defendants' annual gross volume of sales made or business done was not less than $500,000.00 (exclusive of exercise taxes at the retail level that are separately stated) during each of the three calendar years preceding the filing of this complaint.

25.     During each of the three years preceding the filing of this Complaint, Defendants employed at least two individuals who were engaged in interstate commerce or in the production of goods for interstate commerce, or had employees handling, selling, or otherwise working on goods or materials that

had been moved in or produced for commerce by any person, including goods or materials typically used in the fast food industry.

26.     Defendants have substantial control over Plaintiff's and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

27.     Upon information and belief, Defendants apply or cause to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages and reimbursement of automobile expenses.

28.     Defendants have direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

29.     At all relevant times, Defendants maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

30.     Defendant Schroepfer has previously worked for Domino's as a franchise consultant and in international business development.

31.     Defendant Schroepfer has also previously worked for another Domino's franchisee as a regional operations director.

32.     Defendant Schroepfer was Domino's Franchisee Regional Manager of the Year in 2002.

33.     Defendant Schroepfer is individually liable to Tiger Eye's delivery drivers under the definitions of "employee" set forth in the FLSA, 29 U.S.C. § 203(d), and AMWA because he owns and operates the Tiger Eye Domino's stores, serves as a manager of Tiger Eye Pizza, LLC, ultimately controls significant aspects of Tiger Eye Pizza, LLC's day-to-day functions, and ultimately has control over compensation and reimbursement of employees.

34.     At all relevant times, by virtue of his role as owner and president of Tiger Eye Pizza, LLC, Defendant Schroepfer has had financial control over the operations at each of the Tiger Eye Pizza, LLC's Domino's stores.

35.     At all relevant times, by virtue of his role as owner and president of Tiger Eye Pizza, LLC, Defendant Schroepfer has a role in significant aspects of the Tiger Eye Pizza, LLC's Domino's stores' day-to-day operations.

36.     At all relevant times, by virtue of his role as owner and president of Tiger Eye Pizza, LLC, Defendant Schroepfer has had control over the Tiger Eye Pizza, LLC's Domino's stores' pay policies.

37.     At all relevant times, by virtue of his role as owner and president of Tiger Eye Pizza, LLC, Defendant Schroepfer has had power over personnel and payroll decisions at the Tiger Eye Pizza, LLC's Domino's stores, including but not limited to influence of delivery driver pay.

38.     At all relevant times, by virtue of his role as owner and president of Tiger Eye Pizza, LLC, Defendant Schroepfer has had the power to hire, fire and discipline employees, including delivery drivers at Tiger Eye Pizza, LLC's Domino's stores.

39.     At all relevant times, by virtue of his role as owner and president of Tiger Eye Pizza, LLC, Defendant Schroepfer has had the power to stop any illegal pay practices that harmed delivery drivers at the Tiger Eye Domino's stores.

40.     At all relevant times, by virtue of his role as owner and president of Tiger Eye Pizza, LLC, Defendant Schroepfer has had the power to transfer the assets and liabilities of the Tiger Eye LLC's Domino's stores.

41.     At all relevant times, by virtue of his role as owner and president of Tiger Eye Pizza, LLC, Defendant Schroepfer has had the power to declare bankruptcy on behalf of the Tiger Eye Pizza LLC's Domino's stores.

42.     At all relevant times, by virtue of his role as owner and president of Tiger Eye Pizza, LLC, Defendant Schroepfer has had the power to enter into contracts on behalf of each of the Tiger Eye Pizza, LLC's Domino's stores.

43.     At all relevant times, by virtue of his role as owner and president of Tiger Eye Pizza, LLC, Defendant Schroepfer has had the power to close, shut down, and/or sell each of the Tiger Eye Domino's stores.

44.     At all relevant times, by virtue of his role as owner and president of Tiger Eye Pizza, LLC, Defendant Schroepfer had authority over the overall direction of each of Tiger Eye Pizza, LLC's Domino's stores and was ultimately responsible for their operations.

45.     The Tiger Eye Pizza, LLC's Domino's stores function for Defendant Schroepfer's profit.

46.     Defendants have more than four employees.

47.     Defendants are an "employer" within the meanings set forth in the FLSA and AMWA, and were, at all times relevant to the allegations in this Complaint, Plaintiff's employer, as well as the employer of the members of the class and collective.

48.     Defendant Tiger Eye's registered agent for service of process in the State of Arkansas is Blumberg Corporate Services, LLC located at 300 South Spring Street, Suite 900, Little Rock, Arkansas 72201.

### III.     FACTUAL ALLEGATIONS

49.     Plaintiff repeats and re-alleges all previous paragraphs of this Complaint as though fully incorporated in this section.

50.     Defendants own and operate the Domino's pizza franchises located at 3214 Jefferson Avenue, Texarkana, Arkansas 71854; 110 East Martin Luther King, Jr., Boulevard, Texarkana, Arkansas 71854; and 2730 Richmond Road, Texarkana, Texas 75503.

51.     During the period relevant to this lawsuit, Defendants classified Plaintiff and those similarly situated as hourly employees non-exempt from the overtime requirements of the FLSA and the AMWA.

52.     Some or all of Defendants' restaurants employ delivery drivers.

53.     Plaintiff and other delivery drivers employed by Defendants over the last three years have had essentially the same job duties, which was to deliver pizza and other food items to customers, and complete various tasks inside the restaurant when they were not delivering pizzas.

54.     Plaintiff and the other delivery drivers at Defendants' restaurants work "dual jobs," specifically one where they deliver food and receive tips and another where they work inside the store completing non-tipped duties.

55.     Defendants paid Plaintiff and other delivery drivers a rate at or close to minimum wage per hour for work performed while in the store.

56.     Defendants paid Plaintiff and other delivery drivers less than minimum wage per hour plus "tip credit" for all hours worked outside of the restaurant making deliveries.

57.     Plaintiff and other delivery drivers would "clock out" from working inside the store and "clock in" as making deliveries when leaving the restaurant to make deliveries, hereby changing their hourly pay rate.

58.     Defendants require delivery drivers to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

59.     Defendants require delivery drivers to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, financing, cell phone costs, GPS charges, and other equipment necessary for delivery drivers to complete their job duties.

60.     Pursuant to such requirements, Plaintiff and other similarly situated employees purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation,

paid for automobile financing, and incur cell phone and data charges all for the primary benefit of Defendants.

61.    Defendants' stores do not track their delivery drivers' actual expenses nor do they keep records of all of those expenses.

62.    One or more of Defendants' stores do not reimburse delivery drivers for their actual expenses. In fact, none of Defendant's stores reimbursed delivery drivers for their actual expenses.

63.    One or more of Defendants' stores do not reimburse delivery drivers at the IRS standard business mileage rate. In fact, none of Defendants' stores reimbursed delivery drivers at the IRS standard business mileage rate.

64.    One or more of Defendants' stores do not reimburse delivery drivers at a reasonable approximation of the drivers' expenses. In fact, none of Defendants' stores reimburse delivery drivers at a reasonable approximation of the drivers' expenses.

65.    Delivery drivers at Defendants' stores are reimbursed a flat rate per delivery no matter how many miles the deliveries take to complete.

66.    According to the Internal Revenue Service, the standard mileage rate for the use of a car during the relevant time periods has been as follows:

> 2017:  53.5 cents/mile
> 2018:  54.5 cents/mile
> 2019:  58 cents/mile
> 2020:  57.5 cents/mile

67.    As a result of the automobile and other job-related expenses incurred by Plaintiff and other similarly situated delivery drivers, they were deprived of minimum wages guaranteed to them by the FLSA and AMWA.

68.     At all relevant times, Defendants have applied the same pay policies, practices, and procedures to all delivery drivers at their stores.

69.     All of Defendants' delivery drivers had similar experiences to that of Plaintiff.

70.     All of Defendants' delivery drivers were subject to the same reimbursement policy; received similar reimbursements; incurred similar automobile expenses; completed deliveries of similar distances and at similar frequencies; and were paid at or near the applicable minimum wage rate before deducting unreimbursed vehicle costs.

71.     Regardless of the precise amount of the per-delivery reimbursement at any given point in time, Defendants' reimbursement formula has resulted in an unreasonable underestimation of delivery drivers' automobile expenses throughout the recovery period, causing systematic violations of the minimum wage laws.

72.     Defendants charge customers a delivery fee separate from the food charge, but the delivery charge is not paid to the driver per the Dominos.com website (www.dominos.com).

73.     As of the filing of this Complaint, all three of Defendants' stores charge a delivery fee of $2.99 per order.

74.     Defendants paid Plaintiff and other delivery drivers $1.05 per delivery prior to June of 2018.

75.     In about June of 2018, Defendants began paying Plaintiff and other delivery drivers $1.10 per delivery.

76.     Plaintiff regularly made two to three deliveries per hour while working as a delivery driver.

77.     Plaintiff's mileage for each delivery was anywhere in the range of four to ten miles round trip.

78.     Plaintiff estimates that the average delivery was five miles roundtrip.

79.     Thus in 2018, Defendants' average reimbursement rate for Plaintiff was approximately $0.21 per mile ($1.05 per delivery/5 average miles per delivery).

80.     In 2018, for example, the IRS business mileage reimbursement has been $0.545 per mile, which reasonably approximated the automobile expenses incurred delivering pizzas.  https://www.irs.gov/tax-professionals/standard-mileage-rates.  Using that IRS rate as a reasonable approximation of Plaintiff's automobile expenses, every mile driven on the job decreased their net wages by approximately $0.335 ($0.545 - $0.21) per mile.  Considering the estimate of about five average miles per delivery, Defendants under-reimbursed Plaintiff about $1.75 per delivery.

81.     Thus, while making deliveries (assuming 2.5 deliveries per hour), Plaintiff has consistently "kicked back" to Defendants approximately $4.38 per hour ($1.75 per delivery x 2.5 deliveries per hour).

82.     Defendants also took deductions from the wages of Plaintiff and similarly situated delivery drivers for the costs of uniforms that bear the Domino's logo.

83.     Plaintiff and similarly situated delivery drivers were required to wear uniforms with the Domino's logo for Defendants' benefit.

84.     Because Defendants paid their drivers a gross hourly wage at precisely, or at least very close to, the applicable minimum wage, and because the delivery drivers incurred unreimbursed automobile expenses and other job expenses, the delivery drivers "kicked back" to Defendants an amount sufficient to cause minimum wage violations. *See* 29 C.F.R. § 531.35.

85.     Defendants have willfully failed to pay minimum wage to Plaintiff and similarly situated delivery drivers at the Defendants' stores.

86.     Defendants willfully failed to pay overtime wages to Plaintiff and other and similarly situated delivery drivers who worked more than forty (40) hours in a week during the time period relevant to this Complaint.

## IV.     REPRESENTATIVE ACTION ALLEGATIONS

87.     Plaintiff repeats and re-alleges all previous paragraphs of this Complaint as though fully incorporated in this section.

88.     Plaintiff brings his claims for relief for violation of the FLSA as a collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), on behalf of all persons who were, are or will be employed by Defendants as similarly situated employees at any time within the applicable statute of limitations period, who are entitled to payment of the following types of damages:

A.     Minimum wages for the first forty (40) hours worked each week;

B.     Overtime premiums for all hours worked for Defendants in excess of forty (40) hours in any week; and

C.      Liquidated damages and attorney's fees.

89.     Plaintiff proposes the following class under the FLSA:

**All delivery drivers in the last three years.**

90.     In conformity with the requirements of FLSA Section 16(b), Plaintiff has filed or will soon file a written Consent to Join this lawsuit.

91.     The relevant time period dates back three years from the date on which Plaintiff's Original Complaint—Collective Action was filed herein and continues forward through the date of judgment pursuant to 29 U.S.C. § 255(a), except as set forth herein below.

92.     The members of the proposed FLSA Collective are similarly situated in that they share these traits:

A.      They were classified by Defendant as non-exempt from the minimum wage and overtime requirements of the FLSA;

B.      They had substantially similar job duties, requirements, and pay provisions;

C.      They were required by Defendants to incur expenses to maintain vehicles for delivery of Defendants' products;

D.      They were subject to Defendants' common policy of not reimbursing delivery drivers for automobile expenses related to making deliveries for Defendants' restaurants;

E.      They did not receive a lawful minimum wage for the time spent making deliveries for Defendants' businesses.

93.     Plaintiff's claims are essentially the same as those of the FLSA Collective.

94.     Plaintiff is unable to state the exact number of potential members of the FLSA Collective but believe that the class exceeds fifty (50) persons.

95.     Defendants' unlawful conduct is pursuant to a corporate policy or practice.

96.     Defendants are aware or should have been aware that federal law required them to pay employees minimum wage for all hours worked and time and a half overtime wages for hours worked in excess of 40 per week.

97.     Defendants are aware or should have been aware that federal law required them to reimburse delivery workers for expenses relating to "tools of the trade," such as, among other things, automobile costs and gasoline for delivery drivers.

98.     Defendants' unlawful conduct has been widespread, repeated, and consistent.

99.     Defendants can readily identify the members of the class, which encompasses all delivery driver employees of Defendants' restaurants within the three-year period preceding the filing of Plaintiff's Complaint.

100.    The names, addresses and cell phone numbers of the FLSA collective action plaintiffs are available from Defendants, and a Court-approved Notice should be provided to the FLSA collective action plaintiffs via text message, email, and first class mail to their last known physical and electronic

mailing addresses as soon as possible, together with other documents and information descriptive of Plaintiff's FLSA claim.

101.   In recognition of the services Plaintiff has rendered and will continue to render to the FLSA Collective, Plaintiff will request payment of a service award upon resolution of this action.

## V.   FIRST CAUSE OF ACTION
### (Individual Claim for Violation of the FLSA)

102.   Plaintiff repeats and re-alleges all previous paragraphs of this Complaint as though fully incorporated in this section.

103.   Plaintiff asserts this claim for damages and declaratory relief pursuant to the FLSA, 29 U.S.C. § 201, *et seq.*

104.   At all relevant times, Defendants were Plaintiff's "employer" within the meaning of the FLSA, 29 U.S.C. § 203.

105.   At all relevant times, Defendants have been, and continue to be, an enterprise engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 203.

106.   29 U.S.C. §§ 206 and 207 require any enterprise engaged in commerce to pay all employees a minimum wage for all hours worked up to forty (40) in one week and to pay time and a half of regular wages for all hours worked over forty (40) hours in a week, unless an employee meets certain exemption requirements of 29 U.S.C. § 213 and all accompanying Department of Labor regulations.

107.   During the period relevant to this lawsuit, Defendants classified Plaintiff as non-exempt from the overtime requirements of the FLSA.

108.    Defendants paid Plaintiff at or close to minimum wage for all hours worked; however, Defendants required Plaintiff to pay for automobile expenses and other job-related expenses out of pocket and failed to properly reimburse Plaintiff for the expenses.

109.    By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiff to receive minimum wage and overtime pay at an overtime rate of one and one-half times her regular rate of pay for all hours worked over forty (40) in each one-week period.

110.    Defendants' conduct and practices, as described above, were willful, intentional, unreasonable, arbitrary, and in bad faith.

111.    By reason of the unlawful acts alleged herein, Defendants are liable to Plaintiff for monetary damages, liquidated damages, and costs, including reasonable attorneys' fees, for all violations that occurred within the three (3) years prior to the filing of this Complaint.

### VI.    SECOND CAUSE OF ACTION
### (Individual Claim for Violation of the AMWA)

112.    Plaintiff repeats and re-alleges all previous paragraphs of this Complaint as though fully incorporated in this section.

113.    Plaintiff asserts this claim for damages and declaratory relief pursuant to the AMWA, Ark. Code Ann.§§ 11-4-201 *et seq*.

114.    At all relevant times, Defendants were Plaintiff's "employer" within the meaning of the AMWA, Ark. Code Ann. § 11-4-203(4).

115.    Arkansas Code Annotated §§ 11-4-210 and 211 require employers to pay all employees a minimum wage for all hours worked up to forty in one week and to pay one and one-half times regular wages for all hours worked over forty hours in a week, unless an employee meets the exemption requirements of 29 U.S.C. § 213 and accompanying Department of Labor regulations.

116.    During the period relevant to this lawsuit, Defendants classified Plaintiff as non-exempt from the overtime requirements of the AMWA.

117.    Because Defendants required Plaintiff to pay for automobile expenses and other job-related expenses out of pocket, Defendants failed to pay Plaintiff a minimum wage rate for all hours up to forty (40) in each one-week period and an overtime rate of one and one-half times their regular rate of pay for all hours worked over forty (40) in each one-week period.

118.    Defendants' conduct and practices, as described above, were willful, intentional, unreasonable, arbitrary, and in bad faith.

119.    By reason of the unlawful acts alleged herein, Defendants are liable to Plaintiff for monetary damages, liquidated damages, and costs, including reasonable attorneys' fees, for all violations that occurred within the three (3) years prior to the filing of this Complaint pursuant to Arkansas Code Annotated § 11-4-218.

## VII.    THIRD CAUSE OF ACTION
### (Collective Action Claim for Violation of the FLSA)

120.    Plaintiff repeats and re-alleges all previous paragraphs of this Complaint as though fully incorporated in this section.

121.    Plaintiff, individually and on behalf of all others similarly situated, asserts this claim for damages and declaratory relief pursuant to the FLSA, 29 U.S.C. § 201, *et seq.*

122.    At all relevant times, Defendants have been, and continue to be, an "employer" of Plaintiff and all those similarly situated within the meaning of the FLSA, 29 U.S.C. § 203.

123.    During the period relevant to this lawsuit, Defendants classified Plaintiff and all similarly situated members of the FLSA collective as non-exempt from the overtime requirements of the FLSA.

124.    Despite the entitlement of Plaintiff and those similarly situated to minimum wage and overtime payments under the FLSA, and because Defendants required Plaintiff to pay for automobile expenses and other job-related expenses out of pocket, Defendants failed to pay Plaintiff and the members of the FLSA collective a minimum wage rate for all hours up to forty (40) in each one week period and an overtime rate of one and one-half times his regular rate of pay for all hours worked over forty (40) in each one-week period.

125.    Defendants' conduct and practice, as described above, has been and is willful, intentional, unreasonable, arbitrary, and in bad faith.

126.    By reason of the unlawful acts alleged herein, Defendants are liable to Plaintiff and all those similarly situated for monetary damages, liquidated damages, and costs, including reasonable attorneys' fees, for all violations that occurred within the three (3) years prior to the filing of this Complaint.

127.    Alternatively, should the Court find that Defendants acted in good faith in failing to pay Plaintiff and all those similarly situated as provided by the FLSA, Plaintiff and all those similarly situated are entitled to an award of prejudgment interest at the applicable legal rate.

## VIII.    PRAYER FOR RELIEF

WHEREFORE, premises considered, Plaintiff Roger Lewis, individually and on behalf of all others similarly situated, respectfully prays as follows:

A.    That each Defendant be summoned to appear and answer this Complaint;

B.    That Defendants be required to account to Plaintiff, the collective members, and the Court for all of the hours worked by Plaintiff and the collective members and all monies paid to them;

C.    For orders regarding certification of and notice to the proposed collective action members;

D.    A declaratory judgment that Defendants' practices violate the FLSA, 29 U.S.C. § 201, *et seq.*, and the regulations at 29 C.F.R. § 516, *et seq.*;

E.    A declaratory judgment that Defendants' practices violate the AMWA, Ark. Code Ann. § 11-4-201, *et seq.* and the relating regulations;

F.    Judgment for damages for all unpaid minimum wage compensation, overtime compensation, and unreimbursed expenses owed to Plaintiff and the proposed class members under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, and attendant regulations at 29 C.F.R. § 516, *et seq.*;

G.     Judgment for damages for all unpaid minimum wage compensation, overtime compensation, and unreimbursed expenses owed to Plaintiff and the proposed class members under the AMWA, Ark. Code Ann. § 11-4-201, *et seq.* and the relating regulations;

H.     Judgment for liquidated damages pursuant to the Fair Labor Standards Act, 29 US.C. § 201, *et seq.*, and attendant regulations at 29 C.F.R. § 516, *et seq.*, in an amount equal to all unpaid minimum wage compensation, overtime compensation, and unreimbursed expenses owed to Plaintiff and the proposed class members during the applicable statutory period;

I.     Judgment for liquidated damages pursuant to the AMWA, Ark. Code Ann. § 11-4-201, *et seq.*, and the relating regulations;

J.     For a reasonable attorneys' fee, costs, and interest; and

K.     Such other relief as this Court may deem just and proper.

Respectfully submitted,

**ROGER LEWIS, Individually and on Behalf of All Others Similarly Situated, PLAINTIFFS**

SANFORD LAW FIRM, PLLC
ONE FINANCIAL CENTER
650 SOUTH SHACKLEFORD, SUITE 411
LITTLE ROCK, ARKANSAS 72211
TELEPHONE: (501) 221-0088
FACSIMILE: (888) 787-2040

_____
Josh Sanford
Ark. Bar No. 2001037
josh@sanfordlawfirm.com